UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA HEANEY, | : |
| Plaintiff, | : NO. 3:03CV2008 (MRK) |
| v. | : |
| FOGARTY, COHEN, SELBY, & NEMIROFF, LLC, | : |
| Defendant. | : |

**MEMORANDUM OF DECISION**

Plaintiff Donna Heaney brings this employment discrimination suit, alleging that she was terminated on the basis of pregnancy in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), codified as part of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] Her former employer, Defendant Fogarty, Cohen, Selby, & Nemiroff, LLC, moved for summary judgment, *see* Motion for Summary Judgment [doc. #25], and the Court heard oral argument on that motion on October 18, 2005, *see* Minute Entry [doc. #45]. For the reasons explained below, the Court GRANTS Defendant's Motion for Summary Judgment [doc. #25].

I.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1] Ms. Heaney's Complaint also asserted claims of gender discrimination under Title VII, pregnancy discrimination under state law, and negligent infliction of emotional distress, but Ms. Heaney subsequently dropped those claims. *See* Defendant's Substituted Local Rule 56(a)(1) Statement [doc. #26] ¶ 89; Plaintiff's Local Rule 56(a)(2) Statement [doc. #32] ¶ 89.

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.' " *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must draw all ambiguities and inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 255. Although courts must exercise caution in granting summary judgment to the defendant in employment discrimination cases where the employer's intent is in question, *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997), "[s]ummary judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), and "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp*, 118 F.3d at 110. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## II.

The following forms the factual background to Ms. Heaney's claim of pregnancy discrimination. As is required on a motion for summary judgment, the Court relates the facts in the light most favorable to Ms. Heaney. On December 19, 2000, Ms. Heaney started working as a secretary at Fogarty, Cohen, Selby, & Nemiroff, LLC ("the firm"), a small law firm in Greenwich, Connecticut. She was employed at will and assigned to provide support to two associate attorneys in the litigation department, Carolyn Collins and Lawrence Reilly. Ms. Collins had a reputation for being a demanding supervisor, and the working relationship between Ms. Heaney and Ms. Collins

soon became strained, with Ms. Collins apparently giving Ms. Heaney too much work on too little notice, yelling at her, and calling her an idiot.

In February 2001, as Ms. Collins prepared for a large medical malpractice trial, Ms. Heaney discovered that she was pregnant. Unfortunately, she soon began to experience complications and was advised by her doctor to take it easy, avoiding physically stressful activities such as lifting and stair-climbing. On or about March 7, 2005, Ms. Heaney advised Ms. Collins, Mr. Reilly, and the office administrator, Maureen Rapaci, of these complications. Mr. Reilly and Ms. Rapaci were supportive, and Ms. Heaney was permitted to take extra time off work for her doctor's appointments, wedding, and honeymoon. When Ms. Heaney told Ms. Collins about her complications, Ms. Collins suggested that Ms. Heaney should consider a leave of absence if she felt unable to do her job, and Ms. Heaney got the impression that Ms. Collins wanted her out of the firm. Ms. Collins also asked Ms. Heaney to perform tasks that involved climbing stairs, told her on one occasion to bring a heavy file box to court, and continued overloading Ms. Heaney with work, raising her voice with Ms. Heaney, and demeaning Ms. Heaney by calling her an idiot.

Although Ms. Heaney maintains that her performance at work was not the cause of Ms. Collins' hostility, Ms. Heaney acknowledges that she was a less than ideal employee. She was twice reprimanded for violating the firm's email policy through excessive use for personal purposes and, by April 2001, what Ms. Heaney characterizes as occasional lateness had resulted in Ms. Heaney being required to send an email to the office administrator to verify her time of arrival at work. In addition, during the trial of the firm's big malpractice case, Ms. Heaney was entrusted by Ms. Collins with faxing an important notification to opposing counsel. Ms. Heaney's admitted failure to check that the fax had gone through resulted in the trial court prohibiting lead counsel, Mr. Fogarty, from

using demonstrative aids that he had prepared for his summation to the jury. Accordingly, Ms. Heaney concedes that she had some performance issues and that her relationship with Ms. Collins was strained even before her pregnancy. Nevertheless, Ms. Heaney asserts that Ms. Collins became more hostile and more demanding after learning of Ms. Heaney's pregnancy, after which Ms. Collins "started relating all performance issues to plaintiff's pregnancy." Plaintiff's Local Rule 56(a)(2) Statement [doc. #32] ¶ 16.

On May 24, 2001, Ms. Heaney experienced a recurrence of cramping, and her doctor placed her on sixteen weeks of modified bed rest. Ms. Heaney telephoned Ms. Rapaci, the office administrator, and said she would be unable to come to work. Ms. Heaney also asked that her job be held open until September 15, 2001. Ms. Rapaci relayed Ms. Heaney's request to Mr. Nemiroff, the partner primarily responsible for office management. Mr. Nemiroff denied Ms. Heaney's request, and Ms. Heaney was provided with two weeks severance pay. In November 2001, Ms. Heaney filed a complaint of pregnancy discrimination with the Connecticut Commission on Human Rights and Opportunities, which returned a finding of reasonable cause to believe that Ms. Heaney had been discriminated against when Defendant "terminated her from her position because she needed time off from work due to disabilities as a result of complications of pregnancy." Reasonable Cause Finding, Appendix to Plaintiff's Local Rule 56(a)(2) Statement [doc. #33] Ex. 8, ¶ 9. This lawsuit followed.

## III.

Title VII prohibits discrimination against any individual on the basis of gender, 42 U.S.C. § 2000e-2(a)(1), and further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so

affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k) (a subsection also known as the "Pregnancy Discrimination Act"). Ms. Heaney alleges that Mr. Nemiroff violated the Pregnancy Discrimination Act by terminating her from her position as legal secretary to Ms. Collins and Mr. Reilly because of her pregnancy. Although the Connecticut Commission on Human Rights and Opportunities found reasonable cause to believe that Defendant had discriminated against Ms. Heaney by failing to give her the requested disability leave, the Commission's decision sounds in the language of discrimination through a failure to accommodate Ms. Heaney's pregnancy, a claim she has explicitly not asserted before this Court because such a claim would be time barred. The Court further notes that Ms. Heaney has not alleged a hostile work environment claim. Thus, the only claim the Court considers here is Ms. Heaney's assertion that Defendant's decision to terminate her was motivated by pregnancy-based animus.

Like other claims of employment discrimination, claims under the Pregnancy Discrimination Act are analyzed under the three-step burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (applying "the three-step burden shifting analysis of McDonnell Douglas" to a pregnancy discrimination claim). Under the *McDonnell Douglas* test, Ms. Heaney must first establish a prima facie case of pregnancy discrimination, by showing that "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) [either] her position remained open and was ultimately filled by a non-pregnant employee . . . [or] the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Kerzer*, 156 F.3d at 401 (internal citations and quotation marks omitted).

A plaintiff's burden in establishing a prima facie case of discrimination is *de minimis*, *id*., and

Defendant does not seriously dispute that Ms. Heaney has satisfied this low threshold.[2] Instead, consistent with *McDonnell Douglas*, Defendant asserts that it had a valid, non-discriminatory reason justifying the allegedly improper employment action. *See McDonnell Douglas*, 411 U.S. at 802. According to Mr. Nemiroff, the firm's usual practice was to limit disability leave to six weeks; granting Ms. Heaney an additional ten weeks was out of the question because this relatively small firm needed full-time secretarial support for its busy litigation attorneys; and past experience indicated that temporary workers were not an adequate substitute for full-time support. Although Mr. Nemiroff asserts that he made his decision without consulting anyone else, his position on the impracticality of complying with Ms. Heaney's request draws support from evidence in the record that Mr. Reilly, Ms. Heaney's co-supervisor, was also of the view that keeping Ms. Heaney's position open for sixteen weeks would have prevented the firm's attorneys from completing necessary work.

Because Defendant has articulated a legitimate non-discriminatory reason for the adverse employment action Ms. Heaney suffered, "the presumption [of discrimination created by the prima facie case] completely drops out of the picture," and "the employer [is] entitled to summary judgment . . . unless [Ms. Heaney] can point to evidence that reasonably supports a finding of prohibited [pregnancy] discrimination." *James v. N.Y. Racing Association*, 233 F.3d 149, 154 (2d Cir. 2000) (internal quotation marks and citations omitted). Ms. Heaney argues that Mr. Nemiroff's asserted justification for his decision not to hold her position open is merely pretextual. In support of this position, Ms. Heaney alleges that Mr. Nemiroff's justification for her termination is inconsistent with

---

[2] Defendant raises the possibility that a plaintiff on disability leave might be found incapable of establishing the second prong of a prima facie case, namely satisfactory performance of duties, but acknowledges that the Second Circuit has so far left this question open. *See* Defendant's Memorandum in Support of Its Motion for Summary Judgment [doc. #25-9] at 14. Because the Court concludes on other grounds that Ms. Heaney's claims cannot withstand summary judgment, it need not, and does not, decide this question.

the following facts: at the time of Ms. Heaney's termination, Ms. Collins was working only part-time and planned to be on vacation for the whole of July; the firm had enjoyed a very positive experience with Ms. Heaney's predecessor, even though that individual had been a temporary employee; the firm had previously granted maternity leave of fifteen and twenty weeks to Liz Manressa and Ms. Collins, respectively; and Ms. Heaney's replacement was not hired until July 20, 2001, and did not start work until August, 2001, leaving Ms. Heaney's position vacant for ten weeks.

The problem for Ms. Heaney is that even if the alleged inconsistencies cast doubt on the accuracy of Mr. Nemiroff's justification for the adverse employment action, there is simply no evidence in the record that would allow a reasonable jury to conclude that Mr. Nemiroff's explanation was a pretext *for pregnancy discrimination*. As the Supreme Court has explained, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct. In other words, [i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-147 (2000) (emphasis in original) (internal citation and quotation marks omitted). After "examining the entire record" this Court cannot conclude that Ms. Heaney "could satisfy [her] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]." *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation marks omitted).

Apart from the termination itself, Ms. Heaney alleges no act even vaguely evocative of pregnancy discrimination by anyone other than Ms. Collins; in fact, Ms. Heaney acknowledges that Mr. Reilly and Ms. Rapaci were supportive when she told them about the complications of her

pregnancy. With respect to the allegations against Ms. Collins, it is far from clear that Ms. Heaney could persuade a jury that Ms. Collins's reported hostility was motivated by her pregnancy. Ms. Collins has three children of her own, and Ms. Heaney acknowledges that Ms. Collins proved herself a difficult and short-tempered supervisor even before Ms. Heaney became pregnant. Indeed, Ms. Heaney's deposition testimony reveals a significant confusion about Ms. Collins' motivation, with Ms. Heaney at one point asserting that pregnancy may have been the pretext for, rather than the actual motivation behind, Ms. Collins' alleged involvement in her termination. *See* Deposition of Donna Heaney, Defendant's Motion for Summary Judgment [doc. 25-5] Ex. 5, at 130 ("I think that the pregnancy was her excuse, her way to get rid of me.").

Nevertheless, for purposes of the present motion, the Court assumes Ms. Heaney could persuade a jury that Ms. Collins harbored discriminatory pregnancy-based animus towards her. That still would not help Ms. Heaney satisfy her burden of proof, however, because it is undisputed that the decision to terminate Ms. Heaney was not made by Ms. Collins, but by Mr. Nemiroff, as to whom the record contains absolutely no evidence of discriminatory animus. Other than his declining to grant Ms. Heaney sixteen weeks of disability leave, she does not allege that Mr. Nemiroff ever displayed any animus of any kind towards her. In fact, far from demonstrating animus towards pregnant women, the record shows that, in the past, Mr. Nemiroff had approved an extended leave of fifteen weeks for another pregnant employee. "[S]ome factors strongly suggest that invidious discrimination was unlikely." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). Mr. Nemiroff's prior good-will towards another pregnant employee is such a factor – surely, "it is difficult to impute to [Mr. Nemiroff] an invidious motivation that would be inconsistent with the decision" to make an exception to the ordinary leave policy for another pregnant employee. *Id.* Indeed, at oral

argument Plaintiff was unable to articulate how a juror would conclude that Mr. Nemiroff was motivated by pregnancy-based animus. Plaintiff's response was that it would be enough to show that one pregnant employee (Liz Manressa) did her job well and received consideration for an extended leave, whereas another pregnant employee (Ms. Heaney) did not do a good job and did not get such consideration.  But this argument does not remotely demonstrate pregnancy-based discrimination – at best, it shows discrimination on the basis of job performance and that is not actionable.

In the absence of any evidence that Mr. Nemiroff himself harbored pregnancy-based animus, Ms. Heaney argues that Ms. Collins' discriminatory intent should be imputed to him, because, although Mr. Nemiroff was formally the decision-maker, his actions were somehow influenced or controlled by Ms. Collins.   The problem with this creative argument is that the record is equally devoid of any indication that the decision of Mr. Nemiroff, a partner in the firm, was dictated by the desires of Ms. Collins, an associate. The fact that Mr. Nemiroff was told by Ms. Rapaci of Ms. Heaney's problems with punctuality and email, and by Ms. Collins of Ms. Heaney's poor performance during the malpractice trial, in no way supports the inference that Mr. Nemiroff declined Ms. Heaney's disability leave because of her pregnancy, rather than for his stated reason of inconvenience to the firm. Ms. Heaney's conclusory allegations to the contrary are simply not evidence upon which a jury could return a verdict in her favor. *See, e.g.*, *Conroy v. New York State Department of Correctional Services*, 333 F. 3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.") (citation omitted).

Ultimately, Ms. Heaney asks this Court to permit a jury to conclude that the adverse employment action taken against her by Defendant was on account of her pregnancy solely because she was pregnant at the time of her termination.  Without in any way intending to diminish Ms.

Heaney's sense of having been ill-used, the Court would be abdicating its role if it allowed her to present her pregnancy discrimination claim to a jury on the basis of her pregnancy alone. *See Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) ("[Plaintiff] has 'done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient.' " (alterations in original) (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001))). Accordingly, Defendant is entitled to summary judgment on Ms. Heaney's claim of pregnancy-based discrimination.

### IV.

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment [doc. #25]. **The Clerk is directed to enter judgment for Defendant and to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: December 14, 2005**.